UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                              Case No. 17-20060
v.                              Honorable Linda V. Parker

DERRICK ALONZO MAYFIELD

        Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION *IN LIMINE* TO OBJECT TO TESTIMONY OR VIDEO OF GOVERNMENT'S DEMONSTRATIVE EXPERIMENT [ECF NO. 19]**

Plaintiff Derrick Alonzo Mayfield ("Plaintiff") has been charged with one count of being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Presently before the Court is Defendant's motion *in limine* to exclude the admission of a demonstrative video created by the Government. (ECF No. 19.) The motion has been fully briefed. Finding the facts and legal arguments sufficiently presented in the parties' briefs, the Court dispensed with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f) on July 19, 2017. For the reasons that follow, the Court is granting Defendant's motion to exclude the demonstrative video.

1

**I. Background**

On December 11, 2016, Michigan State Police Troopers Pat Barrigar and Tarzza Williams responded to a 911 call at approximately 2:00am which referenced a man with a gun at the Clovertree Apartments in Flint, Michigan. (ECF No. 1 at Pg ID 2.) According to the affidavit in support of the criminal complaint, the caller stated the suspect was in a white Cadillac. (*Id.*) While traveling west bound near the intersection of the apartment complex, Trooper Barrigar saw a white Cadillac "pull out into the roadway from the apartment complex at a high rate of speed without stopping." (*Id.*) The Cadillac passed the troopers, who were in a fully marked patrol vehicle. (*Id.*) The troopers noted that the driver's side window of the vehicle was rolled down. (*Id.*)

The Cadillac then turned northbound onto Ryan Street. (*Id.*) The troopers located the vehicle on Ryan Street, operating without its headlights on and traveling at 50 miles per hour; 25 miles per hour above the speed limit. (*Id.*) According to the affidavit, the Cadillac came to a stop after seeing a second Michigan State Police marked patrol car. (*Id.*) The Cadillac parked near the intersection of Ryan and Corunna streets. (*Id.*)

The driver identified himself as Plaintiff. (*Id.*) The passenger seat was occupied by a woman named Simone Spottsville. (*Id.*) The troopers then walked the path the vehicle had traveled to see if any objects were thrown from the vehicle

while the window was rolled down. (*Id.*) On the path, the troopers located a black-colored .25 caliber pistol lying on top of the snow. The troopers described the gun as "warm and dry to the touch even though it had been snowing throughout the night." (*Id.* at Pg ID 2-3.)

Spottsville informed the troopers that they had left Mayfield's home because of a woman named Lisa who would not leave his home. (*Id.* at Pg ID 3.) Spottsville stated she did not see a gun, but she saw him roll down the window and make "a fast movement as if he as throwing something out the window." (*Id.*)

The Government intends to introduce a demonstrative video recreating the events of the evening. However, Defendant notes there are a number of differences between the video, and the facts from the police report and affidavit discussing the events. First, the demonstrative video was filmed during the daytime when it was not snowing. (ECF No. 19 at Pg ID 40.) Second, the car that is driven in the demonstrative is not a Cadillac. (*Id.*) Third, the car that is driven by the individual portraying Plaintiff and the car that is driven by the individual recording the video appear to be following the 25 mph speed limit. (*Id.*) Defendant does acknowledge at least one similarity: the cars in the demonstrative video follow the route that Plaintiff is claimed to have followed. (*Id.*)

## II. Applicable Law & Analysis

The district court has broad discretion in determinations of admissibility. *Tompkin v. Philip Morris USA, Inc.*, 362 F.3d 882, 897 (6th Cir. 2004). The Sixth Circuit has held that "[e]xperimental evidence is admissible so long as the evidence is relevant and probative, and experimental evidence is deemed to have probative value if the conditions of the experiment were identical with or similar to the conditions of the transaction in litigation." *U.S. v. Baldwin*, 418 F.3d 575, 579-80 (6th Cir. 2005) (quoting *Crown Cork & Seal Co. v. Morton Pharm., Inc.*, 417 F.2d 921, 926 (6th Cir. 1969)). Courts can properly admit experimental evidence if "the tests were conducted under conditions substantially similar to the actual conditions." *Persian Galleries, Inc. v. Transcon. Ins. Co.*, 38 F.3d 253, 258 (6th Cir. 1994) (citing *Randall v. Warnaco, Inc.,* 677 F.2d 1226, 1233-34 (8th Cir. 1982)). However, admissibility "does not depend on perfect identity between actual and experimental conditions. Ordinarily, dissimilarities affect the weight of the evidence, not its admissibility." *Id.*

In *Persian Galleries*, the defendant challenged the admissibility of a videotape reenactment of a theft. *Id.* In his challenge, defendant argued that the reenactment included tape to stabilize glass in a door frame, which was not present during the alleged robbery. *Id.* Because there was no tape on the door frame during the alleged theft, defendant contended that there would have been glass

fragments that would have fallen from the frame and slowed down the robbery. *Id.* The Sixth Circuit found that this one different was insufficient to negate the similarities between the case, and upheld the admissibility of the videotape reenactment. *Id.*

In contrast, the Sixth Circuit in *Baldwin* found that the demonstrative video was "less similar to the events that it purport[ed] to reenact." *Baldwin*, 418 F.3d at 580. In *Baldwin*, defendant was accused of faking his own kidnapping. *Id.* at 576. The Government claimed that during the FBI's interview of defendant, a FBI agent asked defendant if he was able to urinate while kidnapped with his hands bound. *Id.* Defendant stated he was indeed able to, and was then asked to show the FBI agent how he unzipped his pants. *Id.* According to the FBI agent, defendant was unable to "get his hands anywhere near his zipper." *Id.* Because he was unable to reenact unzipping his pants during the interview, the FBI agent accused defendant of staging his kidnapping. *Id.*

During his jury trial, the defendant tried to introduce a video reenactment of his version of the kidnapping. In particular, defendant wanted to show a video that demonstrated he was able to unzip his pants to urinate while his hands were bound. *Id.* at 575. In the video reenactment, defendant's "wrists were tied and he was placed in the backseat of a car, as he said he had been when he had to urinate, and he successfully unzipped his pants." *Id.* at 578. The government objected to its

admission for the following reasons: (1) defendant was in a different car model in the reenactment; (2) there were no knots in the rope used in the video, unlike the rope found in defendant's car; and (3) the rope was allegedly tied in a different place on his wrists. *Id.* The district court excluded the video, stating that it was a "demonstration [not] taken under the same circumstances." *Id.* at 579.

The Sixth Circuit found that "the conditions in the video could have matched more closely those of the alleged kidnapping, and therefore been more probative." *Id.* at 580. The Sixth Circuit then affirmed the lower court's decision, excluding defendant's video.

Similarly, the conditions in the video reenactment the Government created could have matched more closely with the alleged possession of the firearm found in the snow. Factors such as the difference in time of day, weather conditions, speed of the car, and type of car being driven affect the accuracy of the reenactment. (ECF No. 19 at Pg ID 40.) Further, as defendant notes, "[p]eople have different physical capabilities. Size, age, health, gender, training experience, and natural capabilities, all vary from person to person." (*Id.* at Pg ID 41.)

Therefore, this Court finds that the conditions of the video reenactment as described by the parties is not "substantially similar" to the event at issue.

Accordingly,

**IT IS ORDERED** that Defendant's motion *in limine* to exclude the admission of a demonstrative video created by the Government (ECF No. 19) is **GRANTED.**

s/ Linda V. Parker  
LINDA V. PARKER  
U.S. DISTRICT JUDGE

Dated: August 23, 2017

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, August 23, 2017, by electronic and/or U.S. First Class mail.

s/ R. Loury  
Case Manager